238 F.2d 713
 UNITED STATES of America, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
WEST VIRGINIA, and the Honorable Ben Moore, Judge
of the United States District Court for
the Southern District of West
Virginia, Respondents.
 No. 7311.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 17, 1956.
Decided Nov. 13, 1956.
Writ of Certiorari Denied Jan. 21, 1957.
See 77 S.Ct. 382.
 
 Victor H. Kramer, Trial Attorney, Anti-Trust Division, Department of Justice, Washington, D.C. (Victor R. Hansen, Asst. Atty. Gen., Charles H. Weston, Harry E. Pickering and Ernest L. Folk, III, Attorneys, Department of Justice, Washington, D.C., on brief), in support of petition for writ of mandamus.
 Homer A. Holt and Dale G. Casto, Charleston, W. Va. (Kay, Casto & Chaney, Charleston, W. Va., Steptoe & Johnson, Clarksburg, W. Va., Stanley C. Morris, Jackson, Kelly, Holt & O'Farrell, Payne, Minor, Ray, Price & Loeb, Charleston, W. Va., John V. Ray, and John T. Keenan, Charleston, W. Va., on brief), in opposition to petition for writ of mandamus.
 Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.
 PARKER, Chief Judge.
 
 
 1
 This is an application by the United States for a writ of mandamus directed to the Judge of the United States District Court for the Southern District of West Virginia. The application relates to action taken by the District Judge in proceedings wherein a grand jury of the District was making investigation to determine whether indictments for violation of the federal anti-trust laws should be returned against persons or corporations engaged in the milk industry in that area. It asks that the judge be directed to vacate an order quashing in part subpoenas duces tecum for the production of documents before the grand jury, an order imposing conditions upon the use by attorneys for the government of transcript of evidence heard before the grand jury and an order forbidding the grand jury to complete the investigation in which it was engaged. The District Judge has written a letter to the presiding judge of this court which has been received by the members of the court and has been ordered filed in the record as his statement in answer to allegations of the application, a complete transcript of the proceedings in the District Court has been filed, and corporations against whom the subpoenas duces tecum were directed have filed petition to be allowed to intervene and file motion for dismissal of the application. They are allowed to intervene and their briefs and oral argument have been given full consideration by the court. The facts are as follows:On April 30, 1956, a grand jury, which had theretofore been empaneled in the Southern District of West Virginia and had completed its work for the term, was called back in a special session by the District Judge at the instance of attorneys representing the United States Department of Justice to investigate the local milk industry with a view of determining whether there had been violations of the federal anti-trust laws. The judge charged the grand jury as to its duties in the premises, in the course of which he instructed it as to its relationship with the government attorneys, saying that all that the attorneys were supposed to do was 'to show you what the evidence is by letting you hear it and see it and not arguing to you or recommending to you or trying to persuade you of anything.'
 
 
 2
 A few days later motion was made by attorneys representing corporations which were being investigated to quash portions of subpoenas duces tecum requiring the production of certain corporate records before the grand jury. The judge granted the motion on the ground that there was no showing before him that the records so subpoenaed were material to the inquiry, but stated that if the grand jury itself, as distinguished from counsel for the government, made the request, a different question would be presented. Following this, the grand jury appeared in court and requested that subpoenas be issued for the production of the records of the corporations being investigated, including minutes of directors' meetings, annual balance sheets, profit and loss statements, records of annual sales, annual reports and documents showing deviations from regular prices. Upon its appearing that the resolution of the grand jury requesting subpoenas for the production of these documents had been prepared by government counsel, the judge denied the request on the ground that no showing of materiality had been made, although one of the grand jurors spoke up and said that the request for the records, so far as he was concerned, was 'based upon things that had been heard by the grand jury'.
 
 
 3
 Some days later the District Judge notified government counsel that they might not examine other documents which had been produced pursuant to subpoena except in the presence of the grand jury and notified the stenographer taking evidence at the grand jury hearing that transcript thereof was not to be delivered to government counsel. He stated to counsel that they might not have a transcript of the testimony prior to the returning of an indictment. In this connection he said: 'Before indictment I know of no reason why the attorneys should have a copy of the testimony to take away from the grand jury with them any more than they are entitled to have the documents that are brought in under subpoena.' And at another place he said: 'The attorneys for the Government have complete disclosure of everything that's before the grand jury for the purpose of enabling them to perform their duties, and if it is necessary to have a transcript of the evidence for the purpose of drawing an indictment the evidence can be transcribed and the indictment can be drawn in the presence of the grand jury'. On May 25 the court addressed a letter to counsel with regard to the matter in which he said:
 
 
 4
 '1. I do not agree that the stenographer's notes belong to the prosecuting, or executive arm of the government. The Grand Jury is in the judicial branch of government, and it is highly important to the rights of the individual citizen that the distinction between the powers, duties, and rights of the two coordinate branches of government be maintained. The ultimate right to its record of proceedings resides in the Grand Jury under the supervision and guidance of the Court.
 
 
 5
 '2. I do agree with you gentlemen that it is proper for you to have from the stenographer a transcript of the evidence for the purpose of carrying out the duties which you list on page 5 of your brief, namely: '1) the conduct of a thorough investigation; 2) the preparation of the indictment; and 3) preparation for trial.'
 
 
 6
 '3. You will be permitted therefore to receive from the stenographer a transcript of the evidence taken down by him, for the purposes mentioned. This means that if indictments are returned by the Grand Jury you will be permitted to retain the transcript insofar as it relates to persons or corporations then under indictment, for use in preparing for trial and prosecuting the cases to a conclusion. However, if no indictments are found by the Grand Jury or if certain persons or corporations under investigation are not indicted, the transcript relating to such persons or corporations as are not indicted will be returned to the Clerk of the Court as custodian thereof for the Grand Jury.
 
 
 7
 '4. During the use of the transcript by counsel for the government prior to indictment, it shall be kept strictly confidential, and no copies made thereof.
 
 
 8
 '5. Your receipt of a transcript from the stenographer will constitute your acceptance of the conditions as to its use which are set out above.
 
 
 9
 '6. My chief reason for holding that the transcript prior to indictment (or with reference to any persons or corporations not indicted) shall remain undisclosed is my belief that if the Grand Jury, after full and fair investigation, decides not to indict a particular person or corporation, it is not in the interest of justice that testimony which reflects on the character of that person or corporation be left in the hands of anyone, including representatives of the executive department of government.'
 
 
 10
 On May 24, 1956, after the grand jury had been in session a number of weeks, it came into court and requested adjournment to September 10 to permit the stenographer to write up a transcript of the evidence and for government counsel to prepare a digest of the transcript, stating that it would consider further evidence if necessary. The judge denied this request and stated that government counsel would not be allowed to prepare a digest of the evidence that had been heard and read it to the grand jury. On May 29 the grand jury renewed its request for an adjournment, but the court again denied the request and told the grand jury that it had been in session long enough to determine whether or not indictments should be returned and that it should proceed to vote to return or not to return indictments, reiterating that he would not permit government attorneys to digest the evidence for the benefit of the grand jury, saying:
 
 
 11
 'If the facts are complex, there is nothing that anyone can do about that. The government attorneys are not permitted to make a digest of these facts and tell you 'here are the essential facts and you needn't consider any others' because it is the duty of the grand jury to consider all the evidence. That's why the other day when you requested some time to have the government attorneys make a digest of the evidence I refused to permit that because obviously if the government attorneys made a digest of the evidence, then what they presented to you finally would not be the evidence that you gentlemen heard but it would be their opinion of what the important part of that evidence was, whereas you gentlemen as a grand jury are required by your oath to consider all the evidence and there is no way that anybody else can make a digest of it and furnish it to you.'
 
 
 12
 Upon one of the grand jurors stating that it was his understanding that the grand jury believed that the evidence that had been presented warranted further investigation, the court made it clear that the grand jury should either proceed to indict or state that it did not believe anyone should be indicted. The grand jury then held another session and reported to the court that it did not wish to vote on the question of indictment at that time, whereupon the court excused it from further attendance on the court, saying:
 
 
 13
 'You will remain the grand jury of the court until the court calls another grand jury in connection with the November term but you will not be required nor permitted to have any further sessions unless you are called in by the court, so you are now excused and you may claim attendance at the clerk's office.'
 
 
 14
 On June 1 government counsel moved that the court order the grand jury to reconvene on September 15, and the court denied this motion.
 
 
 15
 On these facts, the first question which arises is, assuming that there was error or abuse of discretion on the part of the District Judge, is there power in this court to grant relief by writ of mandamus? Counsel for the intervening corporations which were being investigated by the grand jury deny that we have such power; but to this we cannot agree. The 'all writs' statute, 28 U.S.C. § 1651(a), vests in courts of appeals power to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' As we pointed out in American Chain & Cable Co. v. Federal Trade Commission, 4 Cir., 142 F.2d 909, 912, a court given power to review may by mandamus compel the court over which it is given such power to so exercise its jurisdiction that the power of review may not be defeated. The authority of the appellate court 'is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected. Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal.' Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185. And the writ may be issued to prevent a District Judge from thwarting the commencement of an action over which the appeals court would have appellate jurisdiction, and so it was granted to compel a District Judge to vacate an order denying an application for a bench warrant after an indictment had been returned. Ex parte United States, 287 U.S. 241, 246, 53 S.Ct. 129, 130, 77 L.Ed. 283. In the case last cited, the Supreme Court, speaking through Mr. Justice Sutherland, said:
 
 
 16
 'McClellan v. Carland, 217 U.S. 268, 280, 30 S.Ct. 501, 504, 54 L.Ed. 762, laid down the general rule applicable both to this court and to the Circuit Courts of Appeals, that the power to issue the writ under R.S. 716 is not limited to cases where its issue is required in aid of a jurisdiction already obtained, but that 'where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below."
 
 
 17
 We see no reason why these principles should not be applied to the potential litigation involved in a grand jury investigation. Such litigation, if commenced, lies within the appellate jurisdiction of this court; and if that jurisdiction is being thwarted by erroneous exercise of power or abuse of discretion by the District Judge, there is no more reason why this court should not exercise its power than in the case where the judge is refusing to issue a bench warrant. It is argued that a grand jury might not find indictments, in which event there would be nothing with respect to which appellate jurisdiction could be exercised; but, of course, there would have been nothing with respect to which appellate jurisdiction could have been exercised if the trial of the person arrested under the bench warrant had resulted in an acquittal.
 
 
 18
 Supervisory jurisdiction over litigation in the trial courts is vested in the courts of appeals by the 'all writs' statute quoted above. Supervisory jurisdiction over the administration of justice in the trial courts is vested by 28 U.S.C. § 332 in the judicial councils of the circuits composed of the circuit judges who are given power to make all necessary orders 'for the effective and expeditious administration of the business of the courts within its circuit'. If the matters called to our attention are not matters affecting litigation in the district court with respect to which we have jurisdiction under the 'all writs' statute, they are certainly matters affecting the effective and expeditious administration of the business of the courts and, as such, are subject to our orders as the council of the circuit. It is inconceivable that power should not be vested somewhere to deal with such a situation. It is not necessary, however, to consider our power as the council of the circuit. We think that as grand jury investigations relate to matters potentially within our appellate jurisdiction, we have jurisdiction under the 'all writs' statute to issue writs of mandamus to correct errors or abuses of discretion on the part of the district judge in dealing with such investigations.[1]
 
 
 19
 Coming then to the merits of the case, we think that the United States is upon the undisputed facts unquestionably entitled to the writ. We do not for a moment question the good faith of the learned and able district judge or think that he was actuated by any motives other than a desire to see that justice was properly administered. We think, however, that the action taken by him interfered unduly with the powers of the grand jury and the proper functions of government counsel in the investigation which the grand jury was conducting. In this connection it must be remembered that, while a grand jury is not independent of the court, it is not subject to the court's directions and orders with respect to the exercise of its essential functions. See Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652; Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979. As said in the case last cited:
 
 
 20
 'It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning.'
 
 
 21
 As to the quashing of the subpoenas and the refusal of the court to allow these to be used to bring before the grand jury the records requested because the materiality of such testimony was not shown to the judge, we think that this was clearly erroneous. In investigations of this character, examination of records such as the grand jury sought to examine here may throw much light on whether or not there has been a violation of law by the parties being investigated; and if the right of the grand jury to examine such records is to be denied because it is unable to point out the materiality of the records sought, it will be greatly hampered in the performance of its duties. When a kindred question, i.e., whether the grand jury could require the production of corporate records for its examination in the absence of a specific charge pending before the grand jury (and materiality of records could be judged only with reference to a charge of crime against someone), the Supreme Court in Hale v. Henkel, supra, not only answered the question in the affirmative, but held also that the fact that such corporate records might tend to incriminate the officer producing them was no reason for not requiring their production. In that case the court said (201 U.S. 43, 26 S.Ct. 375):
 
 
 22
 'We deem it entirely clear that under the practice in this country, at least, the examination of witnesses need not be preceded by a presentment or indictment formally drawn up, but that the grand jury may proceed, either upon their own knowledge or upon the examination of witnesses, to inquire for themselves whether a crime cognizable by the court has been committed; that the result of their investigations may be subsequently embodied in an indictment, and that, in summoning witnesses, it is quite sufficient to apprise them of the names of the parties with respect to whom they will be called to testify, without indicating the nature of the charge against them. So valuable is this inquisitorial power of the grand jury that, in states where felonies may be prosecuted by information as well as indictment, the power is ordinarily reserved to courts of impaneling grand juries for the investigation of riots, frauds, and nuisances, and other cases where it is impracticable to ascertain in advance the names of the persons implicated. It is impossible to conceive that in such cases the examination of witnesses must be stopped until a basis is laid by an indictment formally preferred, when the very object of the examination is to ascertain who shall be indicted.'
 
 
 23
 As pointed out elsewhere in Hale v. Henkel, supra, the production of corporate records under a subpoena duces tecum should be held within reasonable limits and materiality may be considered as bearing upon that question; and rule 17(c) of the Rules of Criminal Procedure, 18 U.S.C.A. provides that the court may quash or modify a subpoena requiring the production of books, papers or documents 'if compliance would be unreasonable or oppressive'. There is nothing here to indicate that compliance with the subpoena to produce the records which the grand jury desires to examine would have been either unreasonable or oppressive and the action of the judge was based, not on that ground, but on the ground that their materiality was not shown. We think that this was error. We know of no law requiring that evidence be material before a grand jury have the right to consider it. So far as the intervenors who objected to the production of the records is concerned, they cannot raise the question of materiality. Nelson v. United States, 201 U.S. 92, 115, 26 S.Ct. 358, 50 L.Ed. 673; Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 68 L.Ed. 979. As said in the case last cited: 'He is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his'. So far as we can judge from the record before us, the records which the grand jury asked to be produced for examination are precisely the sort of records that are ordinarily examined in investigations to determine whether prosecutions under antitrust laws are to be instituted.
 
 
 24
 We think, also, that it was an unwarranted interference with the proper functioning of the grand jury and of government counsel who were assisting them in the investigation for the court to forbid counsel to have a transcript of the testimony or to digest it for the benefit of the grand jury or to examine documents except in the presence of the grand jury. We agree, of course, that government counsel should not be allowed to dictate to the grand jury; but no such attempt to dictate to the grand jury is suggested, and the judge in his charge had sufficiently warned against such dictation. In investigations of this sort, it is necessary that the grand jury have the aid of counsel, not only in examining witnesses but also in digesting the great mass of evidentiary matter produced before them, which would mean little or nothing to them unless digested and analyzed in the light of applicable legal principles. It is possible that counsel may abuse their relationship by seeking to influence the grand jury's action; but counsel themselves must sign any indictments which are returned, and the opprobrium which would arise from securing and joining in an unwarranted indictment is ordinarily a sufficient restraint upon excessive enthusiasm on the part of prosecutors. No intelligent lawyer wishes to be placed in the situation of fathering a prosecution which cannot be sustained; and it must not be forgotten that the grand jury is engaged, not in trying the persons whom it investigates but in deciding whether they should be placed on trial. If grand jurors may base an indictment on hearsay, as held in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, we see no reason why they may not consider a digest of testimony which they have heard; and the fact that such digest has been prepared at their request by counsel charged with responsibility for the prosecution furnishes no reason why they may not consider it.
 
 
 25
 We see no objection, furthermore, to counsel for the government being allowed to have a transcript of the testimony to be used by them in conference with their superiors in the Department of Justice. There is nothing in the reason of the rule requiring secrecy of grand jury proceedings[2] which precludes counsel assisting in the investigation from having a transcript of the testimony which they have produced before the grand jury or consulting with their superiors in regard thereto. If they make an improper disclosure of what has occurred before the grand jury or make other improper use of the evidence there taken, they are subject to attachment for contempt; but this is no reason why the court should hamper them in the proper discharge of their duties by denying them free use of the evidence and the documents which have been produced before the grand jury.
 
 
 26
 Likewise, we see no objection to counsel for the government being allowed to summarize for the benefit of the grand jury the evidence that has been heard. This matter was dealt with by Judge Augustus N. Hand in United States v. Rintelen, D.C., 235 F. 787, 791-792, where he said:
 
 
 27
 'If in a complicated case he were not allowed to show the grand jurors the bearing of the evidence upon the alleged violation of the statute, they would certainly be confused as to the entire situation. Even a trained judge is often unable to understand the bearing of relevant testimony without the aid of counsel. Asking the grand jury to find an indictment is but putting in words what every act of the government, and its representatives, means and is well known to mean. What reasonable objection can be urged against allowing the man who has prepared the case to refresh the recollection of the grand jurors by summarizing the evidence taken, perhaps, over weeks or months, and reading from the minutes and giving them a list of the names of the persons charged with the crime? Any objection is really, if not ostensibly, based on the supposition that grand juries are devoid of all independence and prosecuting officers are either tyrannical or dishonest.'
 
 
 28
 With respect to the instruction given the grand jury that it must vote either to indict or not to indict and might not take an adjournment for the summarization of the testimony taken, this we think was a clear invasion of the grand jury's powers and one which cannot be justified by the power to discharge the grand jury, as provided by Rule 6(g) of the Rules of Criminal Procedure. To discharge the grand jury is one thing. To tell them that they must indict or say that they cannot indict and that they cannot take an adjournment for the summarization of the vast mass of testimony taken over several weeks of time, is another and very different thing. In reversing a ruling that a case which had been ignored by one grand jury could not be presented to a subsequent grand jury without permission of the court, the Supreme Court in United States v. Thompson, 251 U.S. 407, 413, 40 S.Ct. 289, 292, 64 L.Ed. 333, approved the following propositions with respect to the power of grand juries and United States Attorneys:
 
 
 29
 '(1) That the power and duty of the grand jury to investigate is original and complete, susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper, and is not therefore dependent for its exertion upon the approval or disapproval of the court; that this power is continuous and is therefore not exhausted or limited by adverse action taken by a grand jury or by its failure to act, and hence may thereafter be exerted as to the same instances by the same or a subsequent grand jury.
 
 
 30
 '(2) That the United States district attorney, in virtue of his official duty and to the extent that criminal charges are susceptible of being preferred by information, has the power to present such informations without the previous approval of the court; and that by the same token the duty of the district attorney to direct the attention of a grand jury to crimes which he thinks have been committed is coterminous with the authority of the grand jury to entertain such charges.'
 
 
 31
 While the grand jury is summoned, empaneled and sworn by the court, it is essentially independent of court control. As said by Judge Fee in United States v. Smyth, D.C., 104 F.Supp. 283, 292: 'While the court may exercise an influence over the proceedings, there is neither a method whereby an indictment by a grand jury can be peremptorily required, nor, on the other hand, is there any method of preventing the presentment of an indictment except by summary discharge'. See also the opinion of Judge Learned Hand in In re Kittle, C.C., 180 F. 946, the opinion of Judge Lindley in Application of Texas Co., D.C., 27 F.Supp. 847, 850, and the opinion of Judge Wyzanski in Application of Iaconi, D.C., 120 F.Supp. 589, 591. The grand jury acts as an independent body. While the judge has the supervisory duty to see that its process is not abused or used for purposes of oppression or injustice (In re National Window Glass Workers, D.C., 287 F. 219, 225), there should be no curtailment of its inquisitorial power except in the clearest cases of abuse. In re Grand Jury Proceedings, D.C., 4 F.Supp. 283; Application of Iaconi, supra. Speaking of the right of a grand jury to continue an investigation once begun, Mr. Justice Frankfurter, in United States v. Johnson, 319 U.S. 503, 512, 63 S.Ct. 1233, 1237, 87 L.Ed. 1546, warned that the grand jury is not to be made 'a pawn in a technical game instead of respecting it as a great historic instrument of lay inquiry into criminal wrongdoing.'
 
 
 32
 In the recent case of Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, the Supreme Court in sustaining an indictment attacked on the ground that it had been found on hearsay evidence, took occasion to speak of the independence of the grand jury, saying:
 
 
 33
 'The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders. There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes. Grand jurors were selected from the body of the people and their work was not hampered by rigid procedural or evidential rules. In fact, grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory. Despite its broad power to institute criminal proceedings the grand jury grew in popular favor with the years. It acquired an independence in England free from control by the Crown or judges.'
 
 
 34
 In Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783, the Supreme Court used language that is peculiarly appropriate here viz.:
 
 
 35
 'The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes 'a judicial inquiry', Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 375, 50 L.Ed. 652, of the most ancient lineage. See Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771. The duration of its life, frequently short, is limited by statute. It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other. That a grand jury proceeding has no defined litigants and that none may emerge from it, is irrelevant to the issue.' (Italics supplied.)
 
 
 36
 In the light of these authorities. we think there can be no question but that, if a grand jury wishes to investigate corporate records, it may do so, subject only to the limitation that the process of the court may not be used to compel their production, if this would be unreasonable or oppressive. If it desires to have the evidence analyzed and summarized by government counsel assisting in the investigation, this may be done. If it wishes to take an adjournment for evidence to be summarized and then come back and give further consideration to the case, it has also the right to do this.
 
 
 37
 For the reasons stated, we think that the government is entitled to the writ which it asks directing the District Judge to reconvene the grand jury to the end that it continue the investigations which it has begun, and to vacate the orders quashing the subpoenas for documents and records and limiting the right of government counsel to receive and use transcript of the evidence heard before the grand jury. It is clear, however, that the learned judge has taken the action complained of merely because of an erroneous view of the law applicable; and we assume that it will not be necessary that the writ of mandamus actually issue requiring him to act, now that this court has passed upon the questions involved. Order will accordingly be entered that the United States is entitled to the writ, but the writ will not actually issue unless further order be entered to that effect.
 
 
 38
 Petition granted.
 
 
 
 [1]
 See In re Texas Company, 91 U.S.App.D.C. 272, 201 F.2d 177, wherein the Court of Appeals of the District of Columbia Circuit denied an application for writ of mandamus to compel the district court to discharge a grand jury without questioning its power to issue the writ in a proper case
 
 
 [2]
 See United States v. Smyth, D.C., 104 F.Supp. 283; United States v. Amazon Industrial Chemical Corp., D.C., 55 F.2d 254