In the Matter of the Grand Jury Subpoenas Duces Tecum Addressed to DYMO INDUSTRIES, INC. and to Modulux, Inc.

Misc. No. 10069.

United States District Court
N. D. California.

June 16, 1969.

Marquis L. Smith, Gilbert Pavlovsky, Antitrust Division—Dept. of Justice, San Francisco, Cal., for the United States.

Eckhoff & Hoppe, Carl Hoppe, James F. Mitchell, San Francisco, Cal., for Dymo Industries, Inc. and Modulux, Inc.

MEMORANDUM AND ORDER

OLIVER J. CARTER, District Judge.

On March 13, 1969, subpoenas duces tecum issued out of this Court commanding Dymo Industries, Inc. and Modulux, Inc., to produce documentary evidence before the Grand Jury for the Northern District of California. The two corporations have filed motions to quash the subpoenas as being violative of the Fourth Amendment to the United States Constitution.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Movants contend that the subpoenas issued for the Grand Jury

are illegal in that they are initiated by the Antitrust Division of the Department of Justice and that they are not issued upon "good cause". The Court has considered both of these reasons and concludes that neither is a basis for quashing the subpoenas.

■ The grand jury is a creation of the Fifth Amendment and is not wholly identifiable with any one of the three traditional branches of government. See In re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir. 1956). The grand jury may conduct investigations on its own initiative or under the direction of the prosecuting agency. United States v. Thompson, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333 (1920). The prosecuting agency may not use for its own purposes the processes available to the grand jury. E. g., Durbin v. United States, 94 U.S.App.D.C. 415, 221 F.2d 520 (1954). This does not mean, however, that the grand jury is being abusively used by the Department of Justice whenever a matter is submitted by the Department to the grand jury for consideration. An investigation conducted at the initiative of the Department of Justice is and always has been a proper function of the grand jury. See Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652(1906).

■ Movants further contend that the subpoenas are unlawful because they are not based on "good cause". This contention also lacks merit. The broadness of the grand jury's inquisitorial powers is too well-settled to require extensive discussion. See e. g., United States v. United States District Court for the Southern District of West Virginia, 238 F.2d 713 (4th Cir. 1956). It is also settled that the grand jury's powers are not immune from application of the Fourth Amendment limitation against unreasonable searches and seizures. See Application of Certain Chinese Family Benevolent and District Associations, 19 F.R.D. 97 (N.D.Cal.1956). No contention is made here that the subpoenas are unreasonable in scope. The sole question

to be answered is whether or not the Fourth Amendment requires that issuances of subpoenas duces tecum be based on good cause.

Before discussing the issue presented here, the phrase "good cause" as used in this memorandum should be defined to avoid any misunderstanding. Movants have used the phrase without defining it other than by arguing that the grand jury's subpoena must "include good cause based upon something other than an unexplained desire to investigate." This Court's definition of "good cause" includes the meaning of "probable cause" which is required for the issuance of warrants by the Fourth Amendment. It further includes anything more or less than such probable cause which movants may contend is necessary to sustain the lawfulness of a grand jury subpoena.

In support of their contention that good cause is necessary, movants have quoted the following language from Hale v. Henkel, 201 U.S. 43, 77, 26 S.Ct. 370, 380, 50 L.Ed. 652 (1905):

> "[S]ome necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers."

A careful reading of Hale v. Henkel reveals that the necessary showing referred to in the above quoted language relates to a necessity which would sustain the massive scope of the subpoena there involved which was otherwise unreasonable. For this reason, *Hale* is not authority for movants' position.

None of the other cases cited by movants in support of their contentions are persuasive. Independent research by this Court has not come across any case which supports movants' position. To the contrary, authority in opposition to movants' contentions can be found.

In Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the Supreme Court answered a contention

similar to the one made here by movants by saying at page 372, 31 S.Ct. at page 541:

> "The objections to the jurisdiction on the ground that there was no 'cause' or 'specific charge' pending before the grand jury were made and answered in Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, and require no further examination."

In Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), the grand jury's function was described by the court at page 282, 39 S.Ct. at page 471, in the following manner:

> "The Fifth Amendment and the statutes relative to the organization of grand juries recognize such a jury as being possessed of the same powers that pertained to its British prototype, and in our system examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual. * * * It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. *As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."* [Emphasis added].

See also, Hendricks v. United States, 223 U.S. 178, 32 S.Ct. 313, 56 L.Ed. 394 (1912).

■ These cases establish the principle that the grand jury's purpose is to determine whether cause exists upon which an indictment would lie and its investigatory powers are not limited only to cases in which such cause exists. However, movants have alerted this Court to the possibility that this principle has eroded to some degree by quoting Meshbesher, Right to Counsel Before Grand Jury, 41 F.R.D. 189, 204 (1966):

> "[T]he developments in the constitutional-criminal procedure field have been so explosive in recent years that even a case decided only a decade ago must be viewed as 'ancient history'. The continued validity of authorities is not to be measured by the mere passage of calendar years, but rather by the significance and magnitude of subsequent developments."

It is true that developments in the criminal procedure field have sometimes required reconsideration of time-honored principles. With this in mind, the Court has delved beyond the traditional principle that good cause is not a necessary basis for grand jury inquiry in view of the Fourth Amendment's prohibition against unreasonable searches and seizures.

The Fifth Amendment's requirement that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" is not without purpose. The reason for this requirement was early explained in Hale v. Henkel, *supra,* and recently reaffirmed in Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962), where Mr. Chief Justice Warren delivering the opinion for the Court said at page 390, 82 S. Ct. at page 1373:

> "Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will."

See also, Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (June 9, 1969). It may be argued, as it sometimes has been, that this principle is theoretical and unrealistic. The charge

is sometimes made that the grand jury is merely a rubber stamp process at the mercy of the United States Attorney's office. See Meshbesher, *supra,* at 189. This cynical description is simply not true. The grand jury process may at times give appearance of a formality exercised without judgment. This appearance, however, is not the necessary result of undue control by the prosecuting agency. The very existence of the grand jury process serves as a deterrent against unwarranted accusations by the prosecuting agency. This results in many cases being presented to the grand jury in which the existence of probable cause for an indictment is so obvious that little thought is required to determine the existence of such cause. It is true that this factor could easily lead to abuse, but such abuse is not the subject of movants' attack in this case. The important thing is that the "rubber stamp" accusation is little authority for curbing the *investigatory* function of the grand jury as opposed to its function of *returning indictments.*

Another reason exists why it is not unrealistic to expect the grand jury to live by its purpose. At the inception of every grand jury, the jurors are charged with their duties under oath. An excerpt of Judge Kaufman's charge to the grand jurors in the Southern District of New York is typical:

"Your prime function is to decide whether or not sufficient evidence has been produced to indicate that a crime probably has been committed by the person accused. Or, stated another way: if upon the credible evidence which you have heard, absent an explanation by the defendant, you would be willing to convict, you should indict. If the evidence produced does not meet the standard necessary for an indictment because you are convinced that you cannot conclude that a crime probably has been committed by the accused, you should have no hesitancy in refusing to vote an indictment.

"You observe therefore that you are performing the critical task of standing as a bulwark between prosecutor and citizen. You have the protection and liberty of the members of this community in your charge." Kaufman, The Grand Jury—Its Role and Its Powers, 17 F.R.D. 331 (1956).

To suppose that lay members of the community will balk at such a charge and simple act as a tool of the prosecuting agency is unsupportable as a general proposition. The degree of control, if any, over the workings of the grand jury varies with the variations in individuals who make up our society. This characteristic is what was intended to be made a part of our federal system of justice. Judge Kaufman ably describes it in the following words:

"[T]he grand jury is so inherently independent of pressures from official and unofficial sources in our society, that a former United States Attorney for the Southern District of New York aptly described it in these words: 'In a sense, but in a very high sense, it is an irresponsible body; nobody can call it to account for its decisions, either in favor of an indictment or against an indictment.' It is this disconnection from control that is so potentially valuable; with it comes grave responsibility for those who will sit as grand jurors. Their power as grand jurors is unique, and the manner in which they use it will depend completely on how much or little they act as *responsible* individuals in an 'irresponsible body.'" Kaufman, *supra,* at 334–335.

If the grand jury is charged with performing the task of determining whether cause exists upon which an indictment may be returned, it is senseless to argue that such cause must exist to conduct an investigation. Such a determination requires investigatory powers of cases without a pre-determination of the existence of good cause. In other words, the function the grand jury is charged with performing is itself the very basis for its investigation of cases

**536**

whether or not good cause does in fact exist. In this respect, the Fourth Amendment presents no conflict with the Fifth Amendment's establishment of the grand jury process. Cf. Oklahoma Press Publishing Co. v. Walling, Wage and Hour Administrator, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

█ It is therefore the conclusion of this Court that the subpoenas in question are lawful without a showing that their issuance was based on good cause. The Court has not been made aware of any reason why the investigation under attack here is otherwise abusive or oppressive which would require some control. Accordingly, it is hereby ordered that the motion to quash the subpoenas duces tecum be, and the same is hereby denied.