In re Antonio DIONISIO and Charles Bishop Smith, Witnesses before the Special February 1971 Grand Jury.

Antonio DIONISIO and Charles Bishop Smith, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 71–1155, 71–1157.

United States Court of Appeals, Seventh Circuit.

March 25, 1971.

Rehearing Denied June 14, 1971.

Frank G. Whalen, Gerald M. Werksman, Chicago, Ill., for appellants.

William J. Bauer, U. S. Atty., Lee Allen Hawke, Asst. U. S. Atty., Sheldon Davidson, Herbert Beigel, Sp. Attys., Sidney M. Glazer, Atty., U. S. Dept. of Justice, for appellee.

Before SWYGERT, Chief Judge, and FAIRCHILD and KERNER, Circuit Judges.

PER CURIAM.

This is an appeal by Antonio Dionisio and Charles Bishop Smith from separate orders finding them in contempt of court and committing them to custody for failing to furnish voice exemplars to the Special February 1971 Grand Jury for the Northern District of Illinois.

On February 17 and 19, 1971, Dionisio and Smith, having been called before the grand jury and advised that they were potential defendants in its investigations, refused the jury's request that they furnish voice exemplars which would be compared with voices contained on Federal Bureau of Investigation tape recordings of telephone messages intercepted pursuant to a court-ordered wiretap.

On February 19 (Dionisio) and February 23 (Smith), the district court ordered that the two witnesses:

> furnish before and to the SPECIAL FEBRUARY 1971 GRAND JURY of the United States District Court for the Northern District of Illinois, or to any duly appointed agent of said Special Grand Jury, such exemplars of respondent's voice as the said Special Grand Jury deems necessary.

The manner in which it was proposed to take these voice exemplars is as follows. The witness would be taken to an office of the United States Attorney and would be requested by FBI agents to read from a transcript of the conversations which the FBI had recorded earlier pursuant to the court-ordered wiretap and with which the witness' voice was to be compared. While reading from this transcript, the witness would speak into a telephone and his voice would be recorded on a machine operated by other FBI agents in some other room in the building. The witnesses would be permitted to have their counsel present at the United States Attorney's office where the scripts were to be read.

Both Dionisio and Smith refused to furnish the requested voice exemplars; and on February 22 (Dionisio) and February 23 (Smith), they were committed for contempt for their refusal to comply with the district court's order. Dionisio and Smith filed notices of appeal on February 23.

■ The district court, having determined that the appeals were frivolous and taken for delay, refused the witnesses' motions to set bail or to stay the commitment order pending appeal. See 28 U.S.C. § 1826(b). On the witnesses' emergency motions, this court found the constitutional questions raised too substantial to justify characterizing the appeals as frivolous and ordered the witnesses admitted to bail.

■ Appellants contend that the procedure attempted by the grand jury violated their fifth amendment privilege against self-incrimination. This is not the law. United States v. Wade, 388 U. S. 218, 222–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); cf. Gilbert v. California, 388 U.S. 263, 265–267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). They further contend that the procedure violated their sixth amendment right to counsel. That contention is also without merit, particularly in view of the option extended to the appellants under which their attorneys would be permitted to be present. Cf. Gilbert v. California, 388 U.S.

263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).[1]

Appellants also urge that the compelled production of voice exemplars for the grand jury upon its subpoena violates their rights under the fourth amendment. This argument raises an important and seemingly novel question.

■ It is now settled that the fourth amendment is applicable to the grand jury process. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). That case dealt with the production of documents under a subpoena duces tecum. The Court believed that a grand jury "order for the production of books and papers may constitute an unreasonable search and seizure within the Fourth Amendment." *Id.* at 76, 26 S.Ct. at 379. Applying the test of reasonableness, the Court held the subpoena to be overbroad, stating that, "A general subpoena of this description is equally indefensible as a search warrant would be if couched in similar terms." *Id.* at 77, 26 S.Ct. at 380.

■ Since Hale v. Henkel, courts have struck down grand jury subpoenas which were unreasonable under the fourth amendment. Schwimmer v. United States, 232 F.2d 855 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L. Ed.2d 52 (1956); *see* Application of Linen Supply Cos., 15 F.R.D. 115 (S.D. N.Y.1953). As stated in Application of Certain Chinese Family Benevolent & Dist. Ass'ns, 19 F.R.D. 97, 99 (N.D.Cal. 1956), the grand jury's subpoena power "must not be so exercised as to impinge upon the prohibition against unlawful searches and seizures."

■ It may be argued that the fourth amendment applies only to overbroad grand jury subpoenas calling for documentary evidence.[2] We do not believe the fourth amendment's application to proceedings before a grand jury is that limited. The rationale for striking down overbroad subpoenas is that general fishing expeditions into the private affairs of witnesses violate the reasonableness requirement of the fourth amendment. Compelling a person to furnish an exemplar of his voice is as much within the scope of the fourth amendment as is compelling him to produce his books and papers.

The Government argues that it is premature to consider these fourth amend-

---

1. These arguments do point out the extent of the Government's involvement in the grand jury's processes. The parties did not brief this troublesome point, and no authority which would justify the grand jury's assumption of power to appoint agents has been cited to us. The fifth amendment's grand jury requirement is "a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused * * *." Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). Delegation of the power to receive subpoenaed evidence raises the question whether the grand jury function would be subverted by requiring the production of voice exemplars before FBI agents stationed in the office of the United States Attorney. This court has indicated that a grand jury might turn over subpoenaed evidence to experts, including government agents, so that those persons might examine the evidence and report on it to the grand jury. In re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir. 1956). But that holding does not go so far as to authorize the jury to require a witness to report directly to government agents for examination or for the purpose of turning over evidence which is recorded and retained by the Government. Since we have determined that the judgment of the district court must be reversed on other grounds, we need not attempt, in this case, to delineate the proper boundaries of the grand jury's authority to delegate certain tasks to government agents. Accordingly, we do not decide whether the deputization of the FBI attempted here was improper.

2. *See* In re Dymo Industries, Inc., 300 F.Supp. 532 (N.D.Cal.), aff'd, 418 F.2d 500 (9th Cir. 1969), cert. denied, 397 U.S. 937, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970).

ment claims because the witnesses' remedy, if any, lies in the exclusion of the evidence at trial if one ultimately ensues. The argument is not persuasive for it appears to be founded on the premise that the grand jury may for its own purposes compel production of evidence in violation of the fourth amendment.

The record shows that the instant grand jury is investigating possible violations of federal criminal statutes relating to gambling and that pursuant to its investigation it has received in evidence voice recordings which were obtained under orders issued by the district court pursuant to 18 U.S.C. § 2518. Since the Government was apparently unable to identify some or all of the voices recorded, the grand jury seeks to obtain voice exemplars from those whom the Government suspects of having participated in the recorded conversations. The interception order is not part of the record nor has it been furnished to appellants. The Government does not claim that the order named Smith or Dionisio or was based on probable cause for belief that either was committing, had committed, or was about to commit an offense enumerated in 18 U.S.C. § 2516, or that the facilities involved were leased to, listed in the name of, or commonly used by either of them. Thus, we do not reach the question whether compulsion to furnish voice exemplars is the ultimate permissible step in the invasion of someone's privacy authorized by the antecedent interception order and whether the probable cause underlying the order makes such compulsion reasonable. For all that appears, Smith and Dionisio may be persons who were suspected of being the other parties to conversations with individuals whose privacy the Government had obtained the right to invade, thus being persons whose privacy was still constitutionally protected.

■ We believe the proposition to be clearly established that under the fourth amendment law enforcement officials may not compel the production of physical evidence absent a showing of the reasonableness of the seizure. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed.2d 746 (1886). It is evident that the grand jury is seeking to obtain the voice exemplars of the witnesses by the use of its subpoena powers because probable cause did not exist for their arrest or for some other, less unusual, method of compelling the production of the exemplars.[3] The issue we must decide is thus narrowed to a determination of whether the interposition of the grand jury between the witnesses and the Government eliminates the fourth amendment protection which would otherwise bar the Government's obtaining the evidence.

The Government and appellants assert that whether the fourth amendment bars the procedure here attempted is really a question of whether probable cause must exist for the compelled production of physical evidence by a grand jury. The fourth amendment, however, not only proscribes the issuance of warrants without probable cause—a proscription not applicable here because no warrant was involved—but also prohibits searches and seizures which are unreasonable. It is the proper application of the standard of reasonableness to seizures in the grand jury context with which we must be concerned.

■■ In Davis v. Mississippi, *supra*, the police detained and fingerprinted a large number of Negro youths in their investigation of an alleged rape where the assailant was described only as a

---

3. We note that the Government in its petition for enforcement described compliance with the grand jury's demand for the exemplars as "essential and necessary to [its] investigation * * * as a standard of comparison in order to determine whether or not [Smith or Dionisio] is the person whose voice was intercepted pursuant to [the court-ordered wiretap]."

Negro youth. The Supreme Court invalidated a conviction deriving from the use of fingerprints so obtained. Ruling that such an investigatory technique constitutes an unreasonable seizure under the fourth amendment, the Court said:

> Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed "arrests" or "investigatory detentions." 394 U. S. at 726–727, 89 S.Ct. at 1397.

We think this language applies with equal force to the instant situation. The fourth amendment bans "wholesale intrusions" upon personal security whether such intrusions stem from illegal arrests or from grand jury subpoenas ostensibly issued only because of the Government's bald statement that the witnesses are potential defendants. The fact that the investigation in this case was conducted under the aegis of the grand jury does not excuse its unreasonableness. The dragnet effect here, where approximately twenty persons were subpoenaed for purposes of identification, has the same invidious effect on fourth amendment rights as the practice condemned in *Davis*.

■ We agree with the Government's observation that the grand jury is not required to have a factual basis for commencing an investigation and can pursue rumors and clues which further investigation may prove groundless. The grand jury does not need probable cause to subpoena witnesses. But that is not to say that the grand jury may misuse its subpoena power to effect a seizure which in other contexts would be violative of the fourth amendment.

We reverse and remand to the district court with directions to vacate its contempt judgments and commitments. ·