**UNITED STATES of America,**

v.

**KLEEN LAUNDRY & CLEANERS, INC., and Jerry Gross, Defendants.**

**No. 73 CR 843.**

United States District Court, E. D. New York.

Aug. 9, 1974.

**520**

David G. Trager, U. S. Atty., E.D.N. Y., by Ronald De Petris, Asst. U. S. Atty., for the United States.

Grunewald, Turk & Gillen, Brooklyn, N. Y., for defendants; by Raymond Bernhard Grunewald, Brooklyn, N. Y., of counsel.

WEINSTEIN, District Judge.

Defendants, Kleen Laundry and Cleaners, Inc. and Jerry Gross, charged with both bribery and conspiracy to bribe a public official under 18 U.S.C. § 201, move for a dismissal of their indictment under Federal Rules of Criminal Procedure 6(g) and 12 and for suppression of evidence at a forthcoming trial. Their action is based on claimed violations of the Fourth Amendment prohibition of illegal searches and seizures and raises issues of the relationship of grand juries to prosecutors in the modern prosecutorial system. We hold, for the reasons indicated below, that the United States Attorney has not, in the circumstances of this case, violated the defendants' rights.

I. *Facts*

In December, 1971, the United States Attorney's office obtained defendants' books and records through the use of a subpoena issued in the name of a grand jury not in session but expected to be sitting on the return date. The grand jury was neither consulted nor notified. The books and records, instead of being surrendered to a grand jury, were accepted by an Assistant United States Attorney and used by the government in further investigation. Eighteen months later the Assistant finally delivered the documents to one of the grand juries which had been sitting in December of 1971.

Apparently, the normal practice in this district—as in others—is for the United States Attorney to decide when the grand jury will need documents; he issues a subpoena on its behalf with or without prior consultation. The subpoena is returnable before the grand jury and the custodian of the papers will actually deliver them to the foreman of the grand jury while it is in session. The papers, if they require analysis, are then turned over to the Assistant United States Attorney prosecuting the case who will analyze them with the help of various government investigative agencies. Where a complex investigation involving many books of account and files is concerned, there is no point in making the analysis while the grand jury sits idly by watching accountants and others silently at work.

In this case, the usual practice was not followed. The defendants voluntarily left the material with the Assistant in charge of the case and made no motion to retrieve them. It was only after the indictment was handed down that this motion complaining of abuse was made.

## II. *The Role of the Grand Jury and United States Attorney*

Time and precedent have not been kind to the grand jury. The institution once had primary responsibility for the discovery and reporting of crime. As local citizens familiar with local conditions, grand jurors were able to report to the itinerant judges of the King's central court system as they made their rounds. 1 W. Holdsworth, A History of English Law 312–27 (7th ed. 1956); 1 J. Stephen, A History of the Criminal Law of England 184–86, 250–58 (1883); United States v. Huston, 28 F.2d 451, 452–453 (N.D.Ohio, 1928). See generally, Kuh, The Grand Jury "Presentment": Foul Blow or Fair Play? 55 Col.L.Rev. 1103, 1105–1110 (1955). The framers of the Constitution expressed their regard for the grand jury with the Fifth Amendment, which provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."

Today the grand jury's independence in the criminal justice system has declined with the increasing complexity of crime and the growth of the role of prosecutors, professional police and investigative forces. *Cf.* Rivera v. Government of the Virgin Islands, 375 F.2d 988, 991 (3d Cir. 1967); National Commission on Law Observance and Enforcement, Report on Prosecution 124 (1931) (Wickersham Report) ("the grand jury usually degenerates into a rubber stamp wielded by the prosecuting officer according to the dictates of his own sense of propriety and justice"); Report of Committees on Civil Rights, Criminal Courts, Law and Procedure, and Federal Courts of the Association of the Bar of the City of New York, Strengthening the Role of the Federal Grand Jury: Analysis and Recommendations, 29 The Record 464 (1974); Note, The Fourth Amendment Exclusionary Rule in the Grand Jury Setting: United States v. Calandra, 9 Harv.Civ. Rights-Civ.Lib.L.Rev. 614–17 (1974).

It is now the United States Attorney who gathers the evidence for later presentation to the grand jury. He calls and examines witnesses, presents documents, explains the law, sums up the evidence, and requests an indictment. The courts have recognized this leadership role. *See, e. g.,* Bacon v. United States, 449 F.2d 933, 943 (9th Cir. 1971) (United States Attorney's mere representations sufficient to show "materiality" as support for arrest of a witness); Russo v. United States, 448 F.2d 369, 374 (9th Cir. 1971) (United States Attorney's assertions that the investigation involved an applicable statute enough for a grant of immunity to grand jury witnesses); United States v. Gower, 447 F.2d 187, 190 (5th Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971) (United States Attorney may draft the indictment for the grand jury); United

States v. Cox, 342 F.2d 167, 171 (5th Cir.), cert. denied sub nom. Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) (United States Attorney may prevent filing of a duly voted indictment); In Re Dymo Industries, Inc., 300 F.Supp. 532, 533 (N.D.Cal.), aff'd. sub nom. United States v. Dymo Industries, Inc., 418 F.2d 500 (9th Cir. 1969), cert. denied, 397 U.S. 937, 90 S. Ct. 946, 25 L.Ed.2d 116 (1970) (broad power of grand jury to utilize subpoenas); 8 Moore's Federal Practice ¶ 6.-04 at 6–45 (2d ed. 1973) ("the prosecutor is in control of grand jury proceedings"). So broad is his role in practice that courts are loath to review prosecutorial actions. Beatrice Foods Co. v. United States, 312 F.2d 29, 39 (8th Cir.), cert. denied, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963) ("courts . . . most cautious in invalidating indictments for alleged grand jury misconduct of the prosecutor"). As Professor Moore notes, "the conduct of the prosecutor in obtaining an indictment is virtually unreviewable." 8 Moore's Federal Practice ¶ 6.04 at 6–47 (2d ed. 1973); cf. Newman v. United States, 127 U.S.App.D.C. 263, 382 F.2d 479 (1967) (discrimination among those equally culpable).

### III. *Issuance of Grand Jury Subpoenas*

■ Here defendants seek to assert not so much their personal rights as the right of the grand jury to control the issuance of its subpoenas. They do not allege prejudice to their position by the actions of the government since it is obvious that had the United States Attorney requested the grand jury's advice on issuance of the subpoena, *pro forma* consent would have followed. Rather, they argue that the use of the power on behalf of, but without direction from, a grand jury results in an invalid indictment which should be dismissed and in illegally obtained evidence which should be suppressed. They are wrong.

Though the grand jury may request evidence, the function of issuing process to obtain it belongs to another. It is the prosecutor who has the initiative and power by subpoena to bring proof to the courthouse. United States v. Thompson, 251 U.S. 407, 413, 40 S.Ct. 289, 292, 64 L.Ed. 333, 342 (1920) ("United States district attorney . . . has the power to present . . . information"); Wilson v. United States, 221 U.S. 361, 372, 31 S.Ct. 538, 541, 55 L.Ed. 771, 776 (1910) (production of documents without testimony may be required); United States v. Brozovich, 465 F.2d 372, 373 (9th Cir. 1972) ("A United States Attorney and a federal grand jury have considerable latitude"); In Re Dymo Industries, Inc., 300 F.Supp. 532, 533 (N.D. Cal.), aff'd. sub nom. United States v. Dymo Industries, Inc., 418 F.2d 500 (9th Cir. 1969), cert. denied, 397 U.S. 937, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970) (normal practice for the United States Attorney to cause subpoenas to be issued); United States v. Culver, 224 F.Supp. 419, 432 (D.Md.1963); United States v. Morton Salt Co., 216 F.Supp. 250, 256 (D.Minn.1962) (investigation started before grand jury in one district shifted to grand jury in another district); United States v. Invader Oil Corp., 5 F.2d 715, 717 (S.D.Cal.1925) (corporate records without testimony); see also, Note, Powers of Federal Grand Juries, 4 Stan.L.Rev. 68, 70 (1951).

Rule 17 of the Federal Rules of Criminal Procedure, which governs the issuance of subpoenas in all criminal proceedings in general and in grand jury proceedings in particular, lends statutory authority to the prosecutor's role. Bacon v. United States, 449 F.2d 933, 940–941 (9th Cir. 1971); 8 Moore's Federal Practice ¶ 17.06 at 17–12, 17–13 (2d ed. 1973); Wright, Federal Practice and Procedure § 271 at 538 (1969). Under this rule, the criminal subpoena is issued by the court clerk

> "signed and sealed but otherwise in blank to a *party* requesting it, who shall fill in the blanks before it is served." (Emphasis added.)

The "party" referred to in the context of the instant case is the United States which is, of course, represented by the

United States Attorney. United States v. Germann, 370 F.2d 1019, 1020 n. 1 (2d Cir.) *vacated because of petitioner's death,* 389 U.S. 329, 88 S.Ct. 503, 19 L. Ed.2d 559 (1967) ("Subpoenas are made freely available in blank form by the court so that the United States Attorney may simply fill in"). That a different grand jury from the one which subpoenas the evidence is presented with that evidence is of little import. This procedure is common. United States v. Thompson, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333 (1928); United States v. Owens-Corning Fiberglas Corp., 271 F. Supp. 561, 566 (N.D.Cal.1967); United States v. Culver, 224 F.Supp. 419, 432 (D.Md.1963); In Re Grand Jury Investigation of Banana Industry, 214 F. Supp. 856 (D.Md.1963); United States v. Germann, 370 F.2d at 1022. By a parity of reasoning, the absence of a sitting grand jury at the time of issuance is not disturbing since the return date was set for a day when the jurors were normally in session.

### IV. *Use of Subpoenaed Materials*

Defendants further argue that the materials obtained by the subpoena were not immediately turned over to any sitting grand jury but instead were illegally used by the Federal Bureau of Investigation and the United States Attorney for further investigation. This argument must also fail. It is settled procedure for the government to analyze evidentiary data for the purpose of reporting back to the grand jury. In Re April 1956 Term Grand Jury, 239 F.2d 263, 272 (7th Cir. 1956), vacated and remanded on other grounds sub nom. United States v. Shotwell Manufacturing Co., 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957); United States v. United States District Court, 238 F.2d 713, 723 (4th Cir. 1956), cert. denied, sub nom. Valley Bell Dairy Co. v. United States, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957); United States v. Culver, 224 F.Supp. 419, 432 (D.Md.1963); Application of Kelly, 19 F.R.D. 269 (S.D.N.Y.1956); cf. United States v. Sweig, 441 F.2d 114,

121 n. 7 (2d Cir.), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971) (grand jury may use transcripts of interview with witness conducted by Assistant United States Attorney rather than inconvenience the witness).

The court has the power to curb any abuse of grand jury process by the prosecutor. The Government may not, for example, use the grand jury as a discovery device to prepare other cases. Durbin v. United States, 94 U.S. App.D.C. 415, 221 F.2d 520 (1954); In Re National Window Glass Workers, 287 F. 219 (N.D. Ohio 1922); United States v. Star, 470 F.2d 1214 (9th Cir. 1972); Beverly v. United States, 468 F.2d 732 (5th Cir. 1972); United States v. Thomas, 320 F.Supp. 527 (D.D.C.1970). Normally the subpoena should be returnable before the grand jury so that it can act as a check—for example, to object to what it perceives to be harassing tactics by a government attorney. A more effective deterrent is a motion to quash or a motion for a protective order by the person subpoenaed. But such motions should be made when the abuse becomes apparent, not after the indictment is handed down and long after any possibly abusive conduct has ceased.

### V. *Remedies of Dismissal and Suppression*

Even were we to find that the documentary evidence had been illegally obtained, it would avail the defendants nothing in a motion to dismiss their indictment. An indictment normally cannot be dismissed because it was returned on the basis of incompetent or illegally obtained evidence.

"The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. . . ." United States v. Calandra, 414 U.S. 338, 344–45, 94 S.

Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974).

See also, United States v. Blue, 384 U.S. 251, 255–256, 86 S.Ct. 1416, 1419, 16 L. Ed.2d 510, 514–15 (1966) (indictment not quashed because of violation of defendant's right against self-incrimination); Lawn v. United States, 355 U.S. 339, 78 S. Ct. 311, 2 L.Ed.2d 321, reh. denied, 355 U.S. 967, 78 S.Ct. 529, 2 L.Ed.2d 542 (1958) (mere suspicion of illegally obtained evidence does not create right to preliminary hearing to determine adequacy of indictment); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L. Ed. 397 (1956) (indictment based on hearsay not a violation of Fifth Amendment); Note, The Fourth Amendment Exclusionary Rule in the Grand Jury Setting: United States v. Calandra, 9 Harv.Civil Rights-Civil Liberties L.Rev. 598 (1974).

Defendants' proper remedy is to move to suppress evidence at the trial.

> "[I]ndictments can be returned as a result of hearsay, illegally obtained or otherwise inadmissible evidence. When the prosecutor seeks to introduce illegally obtained evidence at trial an informed defense motion to suppress is successful; a motion to quash or dismiss an indictment on the same grounds, however, is rarely granted." Boudin, The Federal Grand Jury, 61 Geo.L.J. 1, 26 (1972).

See also, United States v. Thoresen, 428 F.2d 654, 664–665, (9th Cir. 1970); Hunter v. United States, 405 F.2d 1187, 1188–1189 (9th Cir. 1969); West v. United States, 359 F.2d 50, 55–56 (8th Cir. 1966); United States v. D'Angiolillo, 340 F.2d 453, 456 (2d Cir.), cert. denied, 380 U.S. 955, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965). The rationale is that while constitutional exclusionary rules forbid the use of tainted evidence at trial, the rules do not bar the prosecution altogether.

 It is highly doubtful that a motion to suppress the evidence at issue here would be granted on the facts now before the court. Even if we conceded the illegality of this use of grand jury subpoenas, we could not for that reason alone exclude the resulting evidence. It is settled that facts of which the government has prior and independent knowledge cannot be excluded solely because the government also obtained knowledge of them through some illegal means. When the "fruit of the poisonous tree" doctrine was first invoked, the Supreme Court cautioned that:

> "[T]his does not mean that facts thus [illegally] obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others . . . ."
> Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920).

See, in general, Comment, The Inevitable Discovery Exception to the Constitutional Exclusionary Rules, 74 Col.L.Rev. 88 (1974); Comment, Fruit of the Poisonous Tree—A Plea for Relevant Criteria, 115 U.Pa.L.Rev. 1136 (1967); Maguire, How to Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rules, 55 J.Crim.L., C. & P.S. 307 (1964); Cf. Michigan v. Tucker, 417 U. S. 433, 444–445, 94 S.Ct. 2357, 2364–2365, 41 L.Ed.2d 182, 193–194 (1974). The books and records here, if independently subpoenaed for trial, would not fall under a taint since the government was obviously aware of them before the grand jury subpoena was issued.

## VI. *Conclusion*

Our decision should not be viewed as a license for prosecutors to run roughshod over the form of grand jury proceedings. In this case no prejudice whatever has been shown. No intent by the prosecutor to circumvent the defendants' rights has been suggested. We are informed by the United States Attorney —and this is confirmed by defense counsel—that the normal practice in this district is to provide for direct delivery of subpoenaed documents to the grand jury. There is no reason to believe that this event will reoccur. in the ab-

sence of explicit consent of the person delivering documents in answer to a grand jury's subpoena duces tecum.

We are sympathetic to the argument of the defendants. The grand jury is not the private tool of the prosecution. United States v. Fisher, 455 F.2d 1101, 1105 (2d Cir. 1972). It can still serve as

> "both a sword and a shield of justice—a sword because it is the terror of criminals, a shield because it is the protection of the innocent against unjust prosecution."

Federal Grand Jury Handbook, quoted in United States v. Cox, 342 F.2d 167, 186 n. 1 (5th Cir.), cert. denied, sub. nom. Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

Careless prosecutorial methods may so prejudice a defendant's rights so as to cause the courts to raise once again the "sword and shield of justice." But this motion does not provide the occasion.

Defendants' motion is denied.

So ordered.