UNITED STATES of America, Plaintiff,

v.

**Paul V. O'KANE, Defendant.**

**No. 77–352–Cr–JLK.**

United States District Court,
S. D. Florida.

Oct. 13, 1977.

J. V. Eskenazi, U. S. Atty., C. Wesley G. Currier, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Joe A. Varon, Hollywood, Fla., for defendant.

## ORDER SUPPRESSING HANDWRITING EXEMPLARS

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the defendant's motion to suppress handwriting exemplars given on July 9th, 1976. The court, having conducted an evidentiary hearing, considered the record, and being fully advised in the premises, finds and concludes that the motion should be granted.

In response to a subpoena issued by the United States Grand Jury in Miami, Florida, the defendant appeared at the U. S. District Courthouse on July 9th, 1976, along with a number of other prospective grand jury witnesses. Testimony taken at the evidentiary hearing on September 30th, 1977 shows that the group of witnesses was met in the grand jury reception room by an Assistant U. S. Attorney and two Internal Revenue Service agents. The witnesses were requested by the Assistant U. S. Attorney to give certain handwriting exemplars in furtherance of the grand jury investigation. They were informed that they could do so voluntarily at that time, or that they would be brought before a federal judge and ordered to do so under pain of contempt. The witnesses were then asked whether they would like to give the exemplars voluntarily, and there was a general affirmation by the group. It was not established that the defendant O'Kane expressly volunteered to provide the handwriting exemplars, although no witness refused. The witnesses were then taken to the mezzanine office of the U. S. Attorney, and each—including the defendant—gave the requested handwriting exemplars. They appeared and testified before the grand jury later in the day, but at no time was the defendant directed by the grand jury to provide the handwriting exemplars in question.

Defendant now moves this court to suppress the exemplars on grounds that they were illegally obtained. He argues that they were given involuntarily on threat of

coercion and that he was given no warnings of his constitutional rights under the Fourth, Fifth, or Sixth Amendments.

The government contends that this motion raises no legally cognizable issue: because the defendant was a subpoenaed grand jury witness, had he refused to give the exemplars, he would have been subject to a court order compelling him to do so under pain of contempt. *U. S. v. Holland,* 552 F.2d 667 (5th Cir. 1977), is cited for the proposition that a district court may compel handwriting exemplars from a person who is either under arrest, under indictment, or a witness to a grand jury investigation. Therefore, the government argues that it makes no difference whether a subpoenaed grand jury witness provides exemplars before or after testifying and that, as a practical matter, it saves time for all concerned to obtain them beforehand, particularly when the witnesses have to wait to give their testimony.

In effect, the court must determine whether the fact that the defendant had been subpoenaed by the grand jury enabled the Assistant U. S. Attorney to obtain handwriting exemplars from him on his own authority. The focus of the parties' contention can be identified within the interrelationship between the grand jury and the prosecutor. In order to resolve the issue sub judice, the function of each must be examined in light of the requisite balance between the interest of the public in an effective grand jury investigative process and the constitutional rights of the individual to be protected from abuse of that process.

The Supreme Court has repeatedly confirmed the broad investigative powers of the grand jury.

Because its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, [the grand jury's] investigative powers are necessarily broad. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair v. U. S.,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919).

*Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Because of the scope of its authority, "a presumption of regularity attaches to the grand jury's proceedings, and hence to a grand jury subpoena." *In re Grand Jury Proceedings,* 486 F.2d 85, 92 (3rd Cir. 1973). To weigh this position of authority against a prospective witness's constitutional defenses requires consideration of the type of evidence sought in each case.

The issue sub judice centers around handwriting exemplars, which are characterized as nontestimonial identification evidence. The general rule established by the Supreme Court is that a grand jury directive to provide such evidence does not violate the Fourth, Fifth, or Sixth Amendment. Thus, that court recently held that

a grand jury subpoena is not a "seizure" within the meaning of the Fourth Amendment and, further, that that Amendment is not violated by a grand jury directive compelling production of "physical characteristics" that are "constantly exposed to the public."

*U. S. v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 776, 35 L.Ed.2d 99 (1973), citing *U. S. v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). Because of that public exposure, there can be no expectation of privacy concerning an individual's voice, handwriting, or physical appearance. Additionally, because such evidence is not testimonial or communicative but used merely to compare physical properties, the Fifth Amendment privilege against self-incrimination does not arise:

compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination.

*Dionisio,* 410 U.S. at 5, 93 S.Ct. at 767. Real or physical evidence such as handwriting is thus not protected. Finally, the

Sixth Amendment right to counsel does not arise before criminal proceedings have been instituted. Therefore,

[a] witness "before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel . . . ." *In re Groban*, 352 U.S. [330], at 333, [77 S.Ct. 510, at 513, 1 L.Ed.2d 376, at 380.] . . . . Under settled principles the witness may not insist upon the presence of his attorney in the grand jury room.

*U. S. v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 1779, 48 L.Ed.2d 212 (1976). Recent Fifth Circuit cases validating grand jury directives to provide nontestimonial evidence include *U. S. v. Balliro*, 558 F.2d 1177, at 1179 (5th Cir. 1977); and *U. S. v. Shaw*, 555 F.2d 1295 (5th Cir. 1977). These cases also expressly hold such directives not violative of the constitution, as does *U. S. v. Holland, supra*.

■ Each of these cases, however, contemplates evidence provided in response to a grand jury directive. The pivotal factor in the case before this court is this: though the defendant was subpoenaed by the grand jury and actually testified before it, at no time did the grand jury direct him to provide handwriting exemplars. The government argues that the defendant was summoned by a valid grand jury subpoena and was therefore required to give the exemplars. Its position is that the grand jury witness's right to have that body order him to provide exemplars and to be given the opportunity to refuse to do so is a hollow one, since a district court judge can thereupon order him to provide the exemplars under pain of contempt. This court cannot agree. The district courts exercise a supervisory authority over the grand jury function. Should a witness raise a nonconstitutional defense in opposition to a grand jury directive to provide nontestamentary evidence, the district court's duty to prevent abuse of the grand jury process would be triggered by a motion to compel that evidence. Therefore, the witness would be granted an opportunity to show abuse of the process, and the court would be required to determine the propriety of the

subpoena and/or the directive. *See In re Grand Jury Proceedings [Schofield I], supra*; and *In re Grand Jury Proceedings [Schofield II]*, 507 F.2d 963 (3rd Cir. 1975).

■ The issue remains, therefore, whether an Assistant U. S. Attorney has the authority to require a subpoenaed grand jury witness to provide handwriting exemplars without a directive from the grand jury. The U. S. Attorney's powers in connection with a grand jury investigation are substantial. He may propose witnesses to be subpoenaed, have subpoenas issued in blank by the court served without consulting the grand jury, and generally direct the investigation. *In re Melvin*, 546 F.2d 1, 5 (1st Cir. 1976). The grand jury may act on evidence offered by the prosecutor. *Balliro, supra*, at 1179. The prosecutor may even suggest that a witness be called to give exemplars without "impugn[ing] the integrity of the grand jury's investigation." *Shaw, supra*, at 1300. However,

"[t]he Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure." They do not recognize the United States Attorney's office as a proper substitute for the grand jury room and they do not recognize the use of a grand jury subpoena, a process of the District Court, as a compulsory administrative process of the United States Attorney's office.

*Durbin v. U. S.*, 94 U.S.App.D.C. 415, 221 F.2d 520, 522 (1954) (dicta), *quoting U. S. v. O'Connor*, 118 F.Supp. 248, 250–251 (D.Mass.1953). In *Durbin* a subpoenaed grand jury witness was taken to the U. S. Attorney's office and questioned by agents of the Federal Bureau of Investigation and/or the Assistant U. S. Attorney instead of being taken before the grand jury. The court held that such use of the subpoena was an "oppressive tool" and "clearly an improper use of the District Court's process." *Id.*, at 522. It seems clear, therefore,

that the grand jury's historic role confers upon it an authority significantly greater than that of the U. S. Attorney, even when acting in connection with a grand jury investigation, concerning individuals who are neither under arrest nor under indictment.

The case most directly relevant to the issue sub judice is *In re Melvin, supra.* There, the petitioner was subpoenaed by a grand jury for fingerprinting and photographing. Four months later, the Assistant U. S. Attorney sought a court order requiring a lineup described as "necessary for the Grand Jury's investigation". There was no showing that the grand jury had sought the petitioner's participation in the lineup. The appellate court vacated the district court's order requiring petitioner to appear in the lineup, holding that the district court exceeded its authority because the order "was not shown to have been in aid of an appropriate directive of the grand jury issued to Melvin and was lacking any other basis of authority." *Id.,* at 5. There is a factual distinction between the case before this court and *Melvin* in that O'Kane was on his way to the grand jury, and the incident in *Melvin* took place four months later. However, given the importance of the rights under consideration and the ease with which the Assistant U. S. Attorney could have obtained a directive from the grand jury in this case, that distinction is not dispositive.

■ The First Circuit case is couched in terms of balancing the interest of the public in the grand jury investigative process against the rights of the individual to be protected from abuses of that process. The court highlights the broad investigative powers of a grand jury and the substantial powers of an Assistant U. S. Attorney in connection with a grand jury investigation. However, it also uses strong language to assert that the Assistant U. S. Attorney may not use his subpoena powers under Fed.R.Crim.P. 17 to gather evidence without the participation of the grand jury: "[t]he directive has to come from the grand jury itself and has to be conveyed by the grand jury to the witness in an appropriate-

ly formal fashion." *Id.,* at 5. Additionally, the court stated that the failure of the Assistant U. S. Attorney to obtain a directive from the grand jury

was no mere technical error, as the Government asserts, but an error affecting the proper roles of the prosecutor and the grand jury, since to endorse such a procedure would be to allow the United States Attorney to assume the powers of a grand jury . . ..

*Id.,* at 4. In accordance with its analysis and the First Circuit's persuasive decision, this court concludes that it is not sufficient that an individual be subpoenaed before the grand jury for the U. S. Attorney's office to be empowered to obtain exemplars; the grand jury itself must direct the furnishing of nontestamentary evidence such as handwriting exemplars. Without such a directive, under the facts of this case, the district court does not have jurisdiction to compel the evidence sought. *See U. S. v. Holland, supra.*

It is noted that *In re Melvin II,* 550 F.2d 674 (1st Cir. 1977), cited by the government in the hearing, is not relevant to this issue since the grand jury issued a formal order requiring Melvin to appear in the lineup the second time around. The district court held the defendant in contempt for failing to comply with the grand jury's order, and the First Circuit affirmed.

■ The final issue presented by this motion to suppress handwriting exemplars is whether they were given voluntarily. If so, the witness need not be under indictment, under arrest, or under grand jury directive. *See U. S. v. Holland, supra.* Defendant O'Kane argues that the exemplars were provided under coercive threat of a contempt charge. The government contends that they were given voluntarily because the witnesses were given a choice as to when to provide the exemplars and because no one objected.

In *Bradford v. U. S.,* 413 F.2d 467 (5th Cir. 1969), the factual question arose as to whether the defendant was actually under arrest at the time handwriting exemplars were taken. The court held that the ex-

emplars were not admissible unless given voluntarily if they were taken before the defendant was actually under arrest. Bradford claimed that they were not given voluntarily, and the court remanded because of insufficient evidence. In the matter before this court, the government similarly has been unable to support its burden of showing that the exemplars were given voluntarily. Therefore, the use of the exemplars cannot be predicated either on grounds that they were obtained pursuant to a grand jury directive, or on grounds that they were provided voluntarily. Consequently, it is

ORDERED AND ADJUDGED that the defendant's motion to suppress handwriting exemplars be and the same is hereby granted.