177 N.J. Super. 377 (1981)
426 A.2d 1041
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HILLTOP PRIVATE NURSING HOME, INC., JOSEPH MEYER, AND GLORIA MEYER, DEFENDANTS-RESPONDENTS. STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HAROLD L. COHEN, BERNARD MANKOFF, C.P.A., AND GREEN GROVE NURSING AND CONVALESCENT CENTER, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1980.
Decided February 4, 1981.
*379 Before Judges MATTHEWS, MORGAN and MORTON I. GREENBERG.
Wayne J. Martorelli, Deputy Attorney General, argued the cause for appellant (John J. Degnan, Attorney General, attorney; Edwin H. Stier, Assistant Attorney General, of counsel).
Barry M. Epstein argued the cause for respondents Hilltop Private Nursing Home and Joseph Meyer (Sills, Beck, Cummis, Radin & Tischman, attorneys; Lee Alan Adlerstein and Daniel Louis Grossman, on the brief).
Charles M. Moriarty argued the cause for respondents Harold L. Cohen and Green Grove Nursing and Convalescent Center (Anschelewitz, Barr, Ansell & Bonello, attorneys).
Warren W. Wilentz argued the cause for respondent Bernard Mankoff, C.P.A. (Wilentz, Goldman & Spitzer, attorneys; Jack Venturi, on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
At issue on these consolidated appeals is the question, novel to this State, as to whether subpoenas duces tecum returnable before a grand jury need prior authorization by that body. In the cases before us, the attorney general issued the subpoenas without specific and prior grand jury authorization. The subpoenas and the documents produced pursuant thereto were accordingly ordered suppressed.
The State appeals in both Hilltop and Green Grove from almost identical orders suppressing evidence turned over by the *380 respective defendants pursuant to subpoenas duces tecum which on their face indicate that the receipt of the subpoena is commanded to appear before the State Grand Jury with the evidence. The State admits that it issued the subpoenas at a time when no grand jury was sitting but contends that on the return dates listed on the subpoenas a grand jury was in fact sitting. The trial judge in both cases premised his holding upon the State's failure to obtain authorization from the grand jury prior to issuance of the subpoenas, and upon the fact that in both cases the grand jury neither knew the subpoenas were issued nor had it been actively considering the case against defendants when the subpoenas were issued.

I

(Hilltop)
Defendant Hilltop Private Nursing Home, Inc. is a small, personally-held corporation owned and operated by defendants Joseph and Gloria Meyer. In October 1977 the public advocate instituted a civil action against Hilltop alleging violations of state and federal statutes in connection with the administration of the medicaid program.
At about the same time, the Division of Criminal Justice of the Attorney General's office began its own investigation to determine whether possible criminal charges might lie for medicaid fraud. On July 3, 1978 the corporation was served with a form of subpoena duces tecum demanding production of documents on an affixed itemized list which set forth virtually all of Hilltop's financial records for the years 1971 through 1977. The subpoena for the records was returnable July 10, 1978. That subpoena was issued at a time when no grand jury was sitting but was returnable when a grand jury was in session. The subpoena stated on its face that:
You are hereby commanded to appear at Division of Criminal Justice, 13 Roszel Road, in the City of Princeton, on July 10, 1978, at 10:00 a.m. to give evidence before the State Grand Jury and you are ordered to appear without prepayment of witness fees and bring with you the following records: Per attached Schedule "A".

*381 The subpoena was issued not only by the clerk of the court but also by the deputy attorney general and listed his telephone number. Contrary to defendants' assertion, however, the subpoena indicates that the records were to be produced before the grand jury. Some confusion apparently resulted from the fact that the subpoena was returnable at "Division of Criminal Justice, 13 Roszel Road, in the City of Princeton." We take notice that the State Grand Jury is located in the same building as the attorney general and thus its address necessarily corresponds with that of the attorney general. The procedure regularly employed by the Division of Criminal Justice is such that the custodian of the records subpoenaed is entitled to bring them directly before the grand jury and deposit them there on the return date.
Following receipt of the subpoena, defendants immediately filed a motion to quash the subpoena on July 28, 1978 before Judge Jerome Moore. At the hearing before Judge Moore, defense counsel argued in support of the motion to quash that the State had failed to establish sufficiently the existence of a State Grand Jury investigation, as well as the jurisdiction, the nature of the investigation and the subject matter of the investigation. In response the State made the following representation:
... that an audit was conducted by the Medicaid Bureau on the Hilltop Nursing Home, results of that audit became known to the Division of Criminal Justice and the Medicaid Fraud Section. As a result of those audits and what became known to the Division, the subpoena was issued. Now, I do not know what else is needed besides that. I don't think there can be any dispute about the fact that there was an audit conducted and the results called for a criminal investigation for possible Medicaid fraud. The exact results of that investigation we obviously can't determine until we receive the records.
In essence, the State neither confirmed nor denied that there was an ongoing grand jury investigation. Aside from the statement above, the State was silent on this issue. Given the State's statement, however, Judge Moore denied defendants' motion, holding that the State had made a sufficient showing regarding the validity of the subpoena. Defendants ultimately *382 complied with the subpoena, but thereafter appealed Judge Moore's order to this court and collaterally in the federal courts.[*] We affirmed Judge Moore's order in In re Grand Jury Subpoena Duces Tecum, 167 N.J. Super. 471 (App.Div. 1979) and held:
Where, as here, the validity of a grand jury subpoena duces tecum is challenged, the State need establish preliminarily merely (1) the existence of a grand jury investigation and (2) the nature and subject matter of that investigation, in order to overcome the challenge. See In re Grand Jury Subpoenas Duces Tecum, etc., 391 F. Supp. 991, 995 (D.R.I. 1975). Contrary to appellant's suggestion, these matters need not be established by affidavit or other formal proofs, but may be satisfied by simple representation by counsel to the court that a grand jury investigation has been commenced and a recitation of the nature of the investigation. [167 N.J. Super. at 472]
In its brief to this court the State had represented that:
On July 3, 1978, a state grand jury conducting an independent Medicaid fraud investigation of Hilltop Private Nursing Home, Inc., issued a subpoena duces tecum which was served on Hilltop.
Defendants were subsequently indicted. Thereafter, they sought for a second time to attack the validity of the subpoena with which they had already complied, this time by a motion to suppress evidence. At the hearing thereon on October 19, 1979 before another law division judge, the State appears to have revealed for the first time that there had been no State Grand *383 Jury investigation as such into the affairs of Hilltop on July 3, 1978, and that issuance of the subpoena thus could not have been specifically authorized by that body. At the October 19, 1979 hearing the State substantially revealed the procedures it had followed. In a colloquy between the trial judge and the State, the State continuously asserted that there was a grand jury sitting on each return date. However, it conceded that there was no particular grand jury looking into the problems at Hilltop:
The Court: Let me ask it differently. Had you begun presenting anything to any grand jury on Hilltop Private Nursing Home when the subpoena was issued?
[Counsel]: No. Because that's the beginning  that is the inception of the investigation. Until we get the records, we have 260 cases also in our office. I'd say 30 per cent or less ultimately end up in the grand jury with an indictment. For use to go in there, we would overload the grand jury.
The way the Medicaid office works, is that cases are referred to us mostly by the civil branch of Medicaid. They do an audit; they find something they don't like; it pops out of the computer the wrong way, and they send it over to us. We review the case. Until we get those records, we're not even  we're not sure if these allegations are substantiated at all.
There are many times cases are referred to us for legal action, we get the records, we read them, and we say the allegations aren't borne out, and we return the records.
Argument then ensued. In opposition to defendants' contentions, the State maintained essentially that a grand jury investigation was deemed to exist when a subpoena was issued in the name of and returnable before the grand jury. Thus, there was no requirement that the State first go before a grand jury to seek permission to serve subpoenas as long as the return date indicated on the subpoena corresponded with a day on which a grand jury was sitting, albeit not a grand jury specifically impanelled to deal with that particular investigation. The State's position was that the marshaling of evidence and compulsion of witnesses before the grand jury was at least in the first instance a function for the prosecutor. Defendants contended, on the other hand, that the subpoena was invalid unless issued with the grand jury's authorization. The trial judge while stating his inclination to agree with defendants concluded nevertheless that this court had in the course of the prior appeal *384 from the denial of the motion to quash resolved the issue in the State's favor. Defendants claimed that the State had misrepresented that a State Grand Jury had been investigating when the subpoena was issued. They also claimed that the decision of this court specifically stated only that the quantum of proof needed preliminarily to sustain validity of the grand jury subpoena was merely an oral representation by counsel that a grand jury did in fact exist and was investigating the subject matter at that time. This court, the defendants argued, did not decide that a grand jury was in fact existent. The trial judge nevertheless adhered to his determination that he was bound by our prior decision, and the motion to suppress evidence was denied. Defendants thereafter sought leave to appeal from the denial of the suppression motion. Leave was denied on December 5, 1979.
Defendants moved again, on April 3, 1979 in the trial court, to suppress the subpoenaed documents, raising essentially the same challenge argued on the prior motion, and again asserting that the State had been guilty of misrepresenting facts before the courts. The trial judge concurred, stating that he had "sidestepped" the issue during the hearing on the prior motion to suppress. He ultimately granted the motion to suppress as to both the corporate and individual defendants, concluding as a matter of law that a grand jury investigation does not commence until the grand jury is made aware of and authorizes the investigation. He characterized the subpoena duces tecum served upon defendants as an "abuse of process" and a "nullity," holding that such process could not be issued without the express permission of the grand jury itself.
The trial judge also reexamined his prior decision of October 19, 1979 and concluded that this court had not decided the issue since the State had "misrepresented the status of the grand jury investigation":
Thus, at every stage of the many proceedings outlined above, the State represented to each court considering the matter that (1) the subpoena was issued by the State Grand Jury and (2) that at the time issued, a State Grand Jury was actually investigating Hilltop for possible Medicaid fraud. Clearly, the Appellate *385 Division in affirming the denial of the motion to quash assumed both facts to be true.
He therefore stayed further proceedings pending the outcome of the present appeal.

II

(Green Grove)
On November 28, 1978 a subpoena duces tecum, identical to the one served on the defendants in Hilltop, was served on defendant Harold L. Cohen as custodian of records of defendant Green Grove. On that same date a similar subpoena duces tecum, seeking production of work papers, schedules and documents relating to defendant Green Grove and also returnable on December 12, 1978, was served on defendant Bernard Mankoff. In its affidavit the State claimed that a State Grand Jury was in fact sitting on the return date. The State believed, however, that no records were actually produced in compliance with those subpoenas on December 12, 1978. Defendants' account of these facts differ. According to its affidavit, Harold L. Cohen called Deputy Attorney General, Ruth Ann Weidel, at the telephone number attached to the subpoena. Weidel gave Cohen directions as to where the items could be dropped off and indicated to him that they could be left at the Division of Criminal Justice. Cohen asserts he did, in fact, produce 49 boxes of documents and gave these 49 boxes of documents to Raymond Kaminsky of the Division of Criminal Justice.
Thereafter, on April 2, 1979, additional subpoenas duces tecum, seeking production of records relating to defendant Green Grove, H.L. Cohen Builders and consultants and Green Grove Lodge, were served on defendants Cohen and Mankoff. The subpoenas were returnable on April 12, 1979, a date on which a State Grand Jury was sitting. The subpoenaed records were instead delivered to the Division of Criminal Justice on April 26, 1979 due to defendants' apparent difficulty in compiling the materials.
*386 On May 11, 1979 another subpoena duces tecum was served on defendant Mankoff. This subpoena was returnable on May 23, 1979, a date on which the State contends a grand jury was again sitting. However, the documents were delivered to the Division of Criminal Justice on May 30, 1979 at a time when another grand jury was sitting.
Finally on June 20, 1979 subpoenas duces tecum for handwriting exemplars, returnable on June 27, 1979, were served on both defendants Cohen and Mankoff. Although a State Grand Jury was scheduled to sit on the return date defendants instead delivered them out of the grand jury's presence on June 26, 1979.
There is nothing in the record before us that discloses that any of the Green Grove defendants ever moved to quash any of these subpoenas. However, defendants assert that it wasn't until they received a letter dated December 18, 1979 from Deputy Attorney General Corley that they learned that no grand jury had authorized the subpoenas.
On July 31, 1979 the State began presenting evidence in the matter to the State Grand Jury. Defendants were indicted on October 30, 1979.
Defendants thereafter moved for suppression of the evidence or dismissal of the indictment on the grounds that, as in Hilltop, the State had exceeded its authority in issuing subpoenas returnable before the State Grand Jury without the grand jury's authorization, and before it had commenced consideration of an investigation into the matter.
On May 6, 1980 the court granted defendants' motions to suppress on the same grounds given in Hilltop, essentially that the State must get authorization from a grand jury investigating the matter.
Leave to appeal was thereafter sought and granted and the appeal was consolidated with that of Hilltop.

*387 III
This appeal by the State raises the issue of the proper role of the prosecutor and the procedures to be used in assisting in a grand jury investigation. Prior to discussing the substantive law, we deem it important to clarify a few facts. Defendants assert, and the trial judge implied, that the subpoenas issued were blatant "office subpoenas" in that they directed the recipient to appear before the Department of Criminal Justice and not the grand jury. Defendant Hilltop alleges that the subpoena did not state that the records were to be produced before the grand jury. We find this statement to be perplexing particularly since the subpoena on its face states that it is returnable before the grand jury. Defendants also consider important the fact that the subpoenas are returnable to "Division of Criminal Justice, 13 Roszel Road, Princeton, New Jersey," implying that the subpoenas were directed to the State's office. It should be noted, however, that the grand jury sits in the same building as the Division of Criminal Justice and thus necessarily has the same address. The State avers in its affidavit that on each return date there was a grand jury sitting. Its procedure, it asserts, is to inform each witness that he or she can bring the records to the grand jury, but, in fact, in most instances "people ask us to pick up the records." Defendants dispute this assertion, implying that they were given directions to deposit the records with the State. We find nothing, however, in the hearing transcripts which suggests that defendants actually contested the State's version of the procedures followed. The record discloses, as the State contends, that the subpoenas were issued at a time when the grand jury was not sitting but were returnable before a grand jury sitting on the date of return, and that each witness was expressly given an opportunity to present its records before that body.
Because of these facts, the State contends that the trial judge erroneously held that a subpoena can only be issued with the authorization of the grand jury. The State argues that by condemning the practice of the State in issuing subpoenas on *388 behalf of and returnable before the grand jury, the trial judge ignored the fact that this procedure has been long used to aid the grand jury in its investigations. The State also argues that the trial judge's holding would create practical difficulties in grand jury investigations to the extent that the State would have to make a meaningless pro forma appearance before a grand jury that would do little to safeguard the rights of the recipient of the subpoena. It contends that the issuing of the subpoena on behalf of the grand jury is merely a function of the State's duty to "marshal the evidence" before the grand jury.
The trial judge rejected the State's contention, stating that the attorney general has no independent power of subpoena to aid his own investigations. This subpoena power he found to rest solely with the grand jury and thus required its authorization; to hold otherwise would be to make the grand jury's power a tool for the State investigation. He held that the grand jury was a unique, independent body, unbeholden to either the prosecutor or the courts. He specifically held that the State could not rely on Rule 1:9-1 for the authority to issue subpoenas since the grand jury is not subject to the Supreme Court's rule making power. In support of his conclusions he relied on dicta in Brex v. Smith, 104 N.J. Eq. 386 (Ch. 1929):
If the prosecutor has before him any evidence that any man connected with the [police] department has improperly collected money, his course should be to present the facts to the grand jury, and if in its opinion an investigation should be made, subpoenas can be issued in the regular way, calling for such accounts as the grand jury may think necessary to review in the privacy of its deliberations. Should the accounts prove correct, they can be returned to the banks without publicity. If wrong-doing be indicated, an indictment can be returned and the case can proceed in the usual manner, under the direction of the judge presiding at the trial. [104 N.J. Eq. at 391]
The trial judge's holding and the State's argument poignantly point out the conflict many courts have had in characterizing the role of the prosecutor vis-a-vis the grand jury. As was recently noted in United States v. Chanen, 549 F.2d 1306 (9 Cir.1977), cert. den. 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977):
In resolving disputes involving district court, prosecutor and/or grand jury, some appellate courts have attempted to pigeonhole the grand jury into one of the *389 three branches of government created by the first three articles of the Constitution. For example, it has been said that the grand jury is essentially an agency of the court, and it exercises its powers under the authority and supervision of the court. See United States v. Stevens, 510 F.2d 1101, 1106 (5 Cir. 1975). On the other hand, it has been asserted that grand juries are basically law enforcement agencies and are for all practical purposes an investigation and prosecutorial arm of the Executive branch of the government.... But under the constitutional scheme, the grand jury is not and should not be captive to any of the three branches. [549 F.2d at 1312]
In the Chanen court's view, the tradition and the dynamics of the constitutional scheme of separation of powers define a limited function for both the court and prosecutor in their dealings with the grand jury.
A similar tension exists in this State between the prosecutor as a party to the litigation and his role as the investigating arm of the grand jury. A prosecutor, unlike a grand jury, does not have the power to order any individual to appear before him. See State v. Foy, 146 N.J. Super. 378, 391 (Law Div. 1976), app.dism. 153 N.J. Super. 503 (App.Div. 1977); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). The courts, however, have noted that the prosecutor must be given leeway in marshaling the evidence before a grand jury. In In re Tuso, 73 N.J. 575 (1977), for example, defendant sought to quash two subpoenas duces tecum on the basis that the State did not need the information it was seeking. The court rejected that argument, concluding that the function of determining need in such a situation was delegated to the attorney general. 73 N.J. at 579. See N.J.S.A. 2A:81-17.3. The court stated:
The court may not hamstring a prosecuting official in his marshaling of evidence before a grand jury on any fine-spun distinctions between what evidence is sufficient to return a valid indictment and what is necessary to convict. Moreover, the measure of the prosecutor's discretion or judgment in such matters extends to the grand jury's responsibility for investigation of crime as well as the return of indictments. In re Addonizio, 53 N.J. 107, 124, 126 (1968). The Attorney General must in the public interest be afforded broad authority to decide what avenues to pursue before the grand jury in the investigation and prosecution of crime. [73 N.J. at 580]
The resolution of the issue before us as to whether the prosecutor can issue a subpoena on behalf of the grand jury lies *390 somewhere between the prohibition against "office subpoenas" and the prosecutor's duty to marshall evidence before the grand jury.
The State contends that to require the prosecutor to go before the grand jury would be a needless formalism since in all probability the grand jury would approve the request anyway. It sees the issuance of the subpoena merely as part of its duty to marshall evidence before the grand jury since that body lacks the expertise and resources to investigate on its own. Thus, the State argues, a grand jury investigation is started when it issues a subpoena without the grand jury's permission but makes it returnable on a day when it is sitting. This argument was rejected by the trial judge. Aside from his conclusion that only the grand jury had authority to issue the subpoena, he concluded that requiring the authorization of the grand jury prior to its issuance would serve as a safeguard to protect the public from an abuse of the subpoena process; thus, when the attorney general issues a subpoena without the consent of the grand jury, he is only doing so on his own behalf and not for the grand jury. He has a right merely to "suggest" that the grand jury issue it. The trial judge, however, avoided any discussion of the fact that on the dates for the return of the subpoenas there was, in fact, a grand jury sitting to receive the records. This factor has been considered sufficient by a number of courts to uphold the validity of a subpoena issued by the prosecutor. See United States v. Simmons, 591 F.2d 206 (3 Cir.1979); United States v. Walasek, 527 F.2d 676 (3 Cir.1975).
We have found no New Jersey case dealing with this issue aside from our opinion in this same case in In re Grand Jury Subpoena Duces Tecum v. State, 167 N.J. Super. 471 (App. Div. 1979). There we held that to establish the validity of a grand jury subpoena duces tecum the State need establish preliminarily merely (1) the existence of a grand jury investigation and (2) the nature and subject matter of that investigation. 167 N.J. Super. at 472. These matters need not be established by *391 affidavit or other formal proofs but can be satisfied by simple representation by counsel that a grand jury investigation has been commenced. Ibid. Our opinion did not address, however, the issue of when the grand jury investigation is considered to have commenced or the prosecutor's right to issue a subpoena.
The question has been considered by other jurisdictions, particularly the federal courts. Those decisions indicate a split among the courts over the degree of control the prosecutor may exercise in issuing subpoenas on his own. It does appear, however, that the vast majority of courts condone the issuing of subpoenas without the grand jury's permission as long as they are returnable on a day when the grand jury is sitting. See, e.g., United States v. Mandel, 415 F. Supp. 1033 (D.Md. 1976), aff'd in part, vacated and remanded in part on other grounds 591 F.2d 1347 (4 Cir.1979); United States v. Kleen Laundry & Cleaners, Inc., 381 F. Supp. 519 (E.D.N.Y. 1974); United States v. Morton Salt Company, 216 F. Supp. 250 (D.Minn. 1962), aff'd 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1963). The authority to do so has been generally attributed to F.R.Crim.Pro. 17 which provides:
A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate in a proceeding before him, but it need not be under the seal of the court.
The prosecutor's right to serve a subpoena has been given its greatest extension in United States v. Kleen Laundry & Cleaners, Inc., 381 F. Supp. 519 (E.D.N.Y. 1974) on facts strikingly similar to those before us. In Kleen Laundry the United States Attorney's office issued a subpoena in the name of a grand jury not in session but expected to be sitting on the return date. The grand jury was neither consulted nor notified. The books and records, instead of being surrendered to a grand jury, were accepted by an assistant United States Attorney and used by the government in further investigation. Eighteen months later the assistant finally delivered the documents to one of the grand juries. In upholding this procedure the court noted:

*392 Apparently, the normal practice in this district  as in others  is for the United States Attorney to decide when the grand jury will need documents; he issues a subpoena on its behalf with or without prior consultation. The subpoena is returnable before the grand jury and the custodian of the papers will actually deliver them to the foreman of the grand jury while it is in session. The papers, if they require analysis, are then turned over to the Assistant United States Attorney prosecuting the case who will analyze them with the help of various government investigative agencies. Where a complex investigation involving many books of account and files is concerned, there is no point in making the analysis while the grand jury sits idly by watching accountants and others silently at work.
In this case, the usual practice was not followed. The defendants voluntarily left the material with the Assistant in charge of the case and made no motion to retrieve them. [381 F. Supp. at 521]
Importantly, the court found nothing wrong with the procedure employed. It noted that the grand jury's independence has necessarily declined with the increasing complexity of crime and the growth of the role of prosecutors, professional police and investigative forces. 381 F. Supp. 521. It is the prosecutor who calls and examines witnesses, presents documents and explains the law. Ibid. Additionally, the court considered of little importance the fact that a grand jury different from the one which subpoenas the evidence is presented with that evidence; such procedure, it noted, was common. 381 F. Supp. at 523. Addressing the defendants' argument that the procedure could lead to prosecutorial abuse, it concluded that courts have the power to curb any abuse of grand jury process by the prosecutor:
Normally the subpoena should be returnable before the grand jury so that it can act as a check  for example, to object to what it perceives to be harassing tactics by a government attorney. A more effective deterrent is a motion to quash or a motion for protective order by the person subpoenaed. [381 F. Supp. at 523]
Similarly, in United States v. Mandel, 415 F. Supp. 1033 (D.Md. 1976), the court rejected defendant's contention that the United States Attorney issued a grand jury subpoena solely for the purpose of compelling persons to appear at his office for private interviews. After noting the government's affidavit wherein the prosecutor stated that no one subpoenaed was ever refused the opportunity to appear before the grand jury on the return date, the court concluded that since the investigation was a *393 lengthy one it was clearly no abuse of process for five people to be subpoenaed for interviews but not brought before the grand jury. 415 F. Supp. at 1039. The court regarded this as a sound and customary procedure since it eliminated unnecessary material before the grand jury and saved time. Ibid. Accord, Marston's, Inc. v. Strand, 114 Ariz. 260, 560 P.2d 778, 783 (1977).
Notwithstanding the general view that the prosecutor can issue a subpoena without grand jury authorization, some courts have put limits on his ability to accept the subpoenaed material on its return. Thus, in Heisler v. Hynes, 42 N.Y.2d 250, 397 N.Y.S.2d 727, 366 N.E.2d 817 (App.Div. 1977), the court held that while the prosecutor had a right to subpoena the materials, there was no right to inspect them outside the grand jury room since the subpoena is "not intended to deprive its custodian of control which is compatible with its production." 397 N.Y.S.2d at 729, 366 N.E.2d at 819. The court stated that the inspection of records outside the grand jury room was analogous to an impoundment. 397 N.Y.S.2d at 730, 366 N.E.2d at 819. Finding no statutory scheme in New York permitting such activity, the court concluded that the prosecutor had to return the records at the conclusion of each day. Ibid. The decision in Heisler appears to be a minority view. The dissenting opinion of Judge Jasen, 397 N.Y.S.2d at 731, 366 N.E.2d at 820, expresses what the majority of courts consider the proper role of the prosecutor in such a situation:
The court's opinion also reflects a misunderstanding of the nature of the Grand Jury process. The subpoena issued by the prosecutor, on the behalf of the Grand Jury, is returnable before the Grand Jury. It is the Grand Jury, not the prosecutor, who would obtain possession of these records. To say that the order of the Appellate Division gives the prosecutor "unsupervised possession of the petitioner's books and records," as the majority puts it [p. 253 of 42 N.Y.2d, p. 729 of 397 N.Y.S.2d, p. 819 of 366 N.E.2d] is an inexplicable inaccuracy. The Grand Jury would be given possession of the records and the prosecutor's access to the records would be controlled by the members of the Grand Jury. [397 N.Y.S.2d at 733, 366 N.E.2d at 822]
Judge Jasen's dissent is in accord with New Jersey law. As indicated above, our courts give great deference to the prosecutor's skill and resources in organizing and directing a grand jury *394 investigation. See In re Tuso, above, 73 N.J. at 580. Since the prosecutor can look at the information within the confines of the grand jury room in any event, it would appear logical to permit the prosecutor to take custody of such evidence for the grand jury and secure the assistance of investigators in placing the information in a condition of manageable comprehensibility. See Marston's, Inc. v. Strand, 560 P.2d 778, 783 (Ariz. 1977); United States v. Kleen Laundry & Cleaners, Inc., 381 F. Supp. 519, 521 (E.D.N.Y. 1974).
We also note that a number of decisions distinguish the right of the prosecutor to subpoena records to the grand jury room from the situation where the prosecutor purposely intercepts the witness at the grand jury door without giving him an opportunity to go before the grand jury. In United States v. O'Kane, 439 F. Supp. 211 (S.D.Fla. 1977), for example, a group of witnesses were met in the grand jury reception room by an assistant United States Attorney and two internal revenue agents. The witnesses were requested to give certain handwriting exemplars in furtherance of the grand jury investigation. They were informed that they could do so voluntarily at that time, or that they would be brought before a federal judge and ordered to do so under pain of contempt. The court rejected the prosecutor's contention that as a practical matter the procedure followed was worthwhile since it saved time for all concerned to obtain them beforehand, particularly when the witnesses have to wait to give their testimony. 439 F. Supp. at 213. According to the court the pivotal factor in this type of situation was:
[T]hough the defendant was subpoenaed by the grand jury and actually testified before it, at no time did the grand jury direct him to provide handwriting exemplars. [439 F. Supp. at 214]
Taken out of context that language of the court would seem to indicate that the prosecutor must have the authorization of the grand jury to obtain evidence. However, shortly thereafter the court noted that the United States Attorney's powers in connection with a grand jury investigation are substantial:

*395 He may propose witnesses to be subpoenaed, have subpoenas issued in blank by the court served without consulting the grand jury, and generally direct the investigation. In re Melvin, 546 F.2d 1, 5 (1 Cir. 1976). The grand jury may act on evidence offered by the prosecutor. Balliro, supra, 558 F.2d 1177 at 1179.... However, "[t]he Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure." They do not recognize the United States Attorney's office as a proper substitute for the grand jury room and they do not recognize the use of a grand jury subpoena, a process of the District Court, as a compulsory administrative process of the United States Attorney's office. [439 F. Supp. at 214 citing in part Durbin v. United States, 221 F.2d 520, 522 (1954)]
The case therefore seems to stand for the proposition that a prosecutor can issue a subpoena without grand jury authorization if it is returnable to the grand jury room. However, the thin line between a valid grand jury subpoena and an invalid office subpoena is crossed when the prosecutor does not provide the subpoenaed witness with an opportunity to go before the grand jury on the return date.
Most of the decisions addressing this subject are in accord with this proposition. Even the decision in Durbin v. United States, 221 F.2d 520 (D.C. Cir.1954), the case principally relied on in the reasoning of the trial judge here, can be seen as supporting this proposition. In Durbin a subpoenaed grand jury witness was taken to the United States Attorney's office and questioned by agents of the F.B.I. and the Assistant United States Attorney instead of being taken before the grand jury. On these facts the court held that this use of the grand jury subpoena was an "oppressive tool" and "clearly an improper use of the District Court's process." 221 F.2d at 522. In that case the witness was not given an opportunity to go before the grand jury; the lack of opportunity to do so substantially distinguishes Durbin from the cases allowing a prosecutor to issue the subpoena if on the return date a grand jury is sitting and available to receive the material requested. Cf. United States v. Thomas, 320 F. Supp. 527 (D.D.C. 1970), (subpoena requesting witness to appear directly to prosecutor's office and not to the grand jury held invalid).
*396 We believe that the trial judge erred in concluding that the subpoenas here were invalid. As the State points out, each subpoena directed the recipient to go to the grand jury on the return date; a grand jury was sitting on each return date, and each witness was expressly told that he could go before the grand jury should he choose to do so. The fact that the materials were voluntarily handed to the prosecutor is of little importance since the crucial factor is the opportunity and not the necessity of going before the grand jury. See Kleen Laundry, above, 381 F. Supp. at 521.
We do not think that our previous decision in In re Grand Jury Subpoena Duces Tecum v. State, 167 N.J. Super. 471, calls for a different result. There, we stated that where the validity of a subpoena is challenged, the State need establish preliminarily merely (1) the existence of a grand jury investigation and (2) the nature and subject matter of that investigation. 167 N.J. Super. at 472. Nowhere in the opinion do we state at what point the grand jury should come into existence.
Finally, we disagree with the trial judge's conclusion that the court rules, particularly R. 1:9-1 and R. 1:9-2, do not apply in the grand jury context. He reached that determination by concluding that in its investigative and accusatory functions the grand jury does not act as an arm of the Superior Court and thus is not susceptible to its rule. He therefore concluded that the State could not rely on R. 1:9-1 and R. 1:9-2 for the authority to issue a subpoena without grand jury authorization.
Facially, the two rules cited are almost indistinguishable from F.R.Crim.Pro. 17 which the federal courts have concluded give the United States Attorney authority to issue a subpoena without grand jury authorization. In re Melvin, 546 F.2d 1, 5 (1 Cir.1976); United States v. O'Kane, 439 F. Supp. 211, 214 (S.D.Fla. 1977); United States v. Kleen Laundry & Cleaners, Inc., 381 F. Supp. 519, 522 (E.D.N.Y. 1974). Our Supreme Court in State v. Haines, 18 N.J. 550 (1955) clearly stated that the grand jury was under the court's supervision:

*397 The question reduces itself to whether the grand jury is part of the court. Of this it seems there is no doubt. In In re Schwartz, 133 N.J.L. 79, 84-85 (Sup.Ct. 1945), reversed on other grounds 134 N.J.L. 267 (E. & A. 1946), the court of last resort approved the expression of the law "that the grand jury is an arm of the court, the proceedings by it are to be regarded as proceedings in the court, and that contempts in the presence of the grand jury are to be treated as taking place in the presence of the court." [18 N.J. at 557]
We believe that to find that a grand jury had an absolutely independent existence would be to approve the type of "pigeonholing" the court referred to and disapproved of in United States v. Chanen, 549 F.2d 1306, 1312 (9 Cir.1977).
We reverse the trial judge's determination that a subpoena is invalid unless it has been issued with the prior approval of the grand jury, and his determination that the evidence obtained under the subpoenas here under review should be suppressed.
NOTES
[*] In proceedings not germane to the present motion, defendants subsequently applied in both state and federal courts for a stay of the subpoena's directive and a return of the records from the State, which had obtained exclusive possession on September 6, 1978. Following return of the subpoenaed records to defendants in compliance with the order of the United States District Court, the Third Circuit Court of Appeals stayed that order on November 3, 1978. The State the moved before Judge Schoch for an order to show cause why defendants should not be held in contempt for failure to comply with the subpoena. Judge Schoch declined to hold defendants in contempt, but ordered the turnover of the records to the State on November 9, 1978.

Thereafter, on December 5, 1978, the United States District Court issued an order directing defendants to return the records to the State. Defendants complied, but then appealed Judge Schoch's order to this court, which dismissed the appeal on May 2, 1980. In the Matter of the State Grand Jury Investigation for the Hilltop Private Nursing Home, Inc., Joseph H. Meyer and Leonard A. Coyle, Charged with Contempt, 167 N.J. Super. 471.